COURT OF 
APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH 
NO. 
2-04-120-CR    
ANTHONY D. 
SMITH                                                             APPELLANT  

V.  
THE STATE OF 
TEXAS                                                                  STATE  
  
------------ 
FROM THE 396TH DISTRICT COURT OF TARRANT 
COUNTY 
------------ 
MEMORANDUM OPINION[1] 
------------
        In 
four points, Appellant Anthony D. Smith[2] appeals his conviction 
for aggravated robbery with a deadly weapon. Appellant waived his right to a 
jury trial and was found guilty by the trial court. The trial court assessed 
punishment at twenty years’ imprisonment. We will affirm.
Background
        On 
May 27, 2001, Fort Worth Police officers, Jeremy Spann and Johnny Salazar, 
responded to a 911 hang-up call that had been placed from a residence located at 
4221 Avenue J. Medstar medical personnel also responded to the call. When 
officers arrived, they found Brandon Cooper-Bennett (Cooper) on the porch of the 
house with his hand over his chest, complaining about his inability to breathe. 
As the officers and medical personnel attempted to help Cooper, they noticed 
that he had sustained a gunshot wound to the chest at a “pretty close range.” 
Spann testified that Cooper told him that he had been shot by “two black males.” 
Police found no identification on Cooper and the only physical evidence 
recovered at the scene was a .25 caliber shell casing and some blood 
samples.[3]  
Medstar transported Cooper to the hospital where he later died from the gunshot 
wound.
        Approximately 
three months later, Detective Matthew Hardy became involved in the investigation 
of Cooper’s death. Hardy interviewed Rodney and Michael Colbert, who were under 
arrest for theft of a motor vehicle. During the interview, Rodney implicated 
Appellant and Darrell Richie in the shooting that occurred at Avenue J. Over the 
course of the investigation, Hardy also obtained the names of Brandon Holloway 
and Jason Wade, who were believed to have information related to the shooting 
and death of Cooper. Eventually, Hardy learned that two 911 calls were made on 
the date of the shooting—one from Cooper and the other from a residence located 
one-half block from the shooting. Hardy learned that Cody Lacy had placed the 
other 911 call. Lacy testified that she was sitting in her front yard by her 
front porch when a black car pulled up to her house. She also stated that she 
saw two people wearing black clothing get out of the car and “head up Avenue J.” 
However, Lacy could not identify the race or gender of the two people who exited 
the car. Lacy stated that a few minutes after the two people exited the car she 
heard a gunshot. She never saw the two people get back into the car because she 
went inside her house and called 911.
        According 
to Wade, approximately two or three days after the shooting, Appellant and 
Richie went to his house.[4]  Wade stated that 
Appellant and Richie had talked about “hitting a lick” on the “dope house on 
J.”[5]  Wade 
testified that Appellant said they knocked on the door to the drug house and 
that Appellant admitted to shooting “him” in the chest.  Although Wade did 
not testify that Appellant actually said he shot Cooper, his testimony indicated 
that he knew who Appellant was referring to because both Wade and Cooper worked 
at the drug house, Wade was either supposed to take the next shift after Cooper 
or was trying to work the day of the shooting,[6] and Wade was told after 
the fact about who was shot and killed at the house on Avenue J.  However, 
it must be noted that other portions of Wade’s testimony are contradicted by the 
testimony of Richie and Vicki Duffy.[7]
        Both 
Holloway and Richie testified against Appellant. According to Holloway, 
Appellant and Richie were with him on the night of the shooting. He testified 
that both Appellant and Richie 1) were wearing dark clothing that night, 2) were 
riding in a black Cadillac that he was driving, and 3) were the two individuals 
that got out of the car when he parked on the street located at Avenue J. 
Holloway testified that he heard two gunshots, not one, which contradicted the 
testimony of Lacy and Richie. Additionally, Holloway stated that he did not make 
any deals with the State in exchange for his testimony.
        According 
to Richie’s testimony, while he knew that he and Appellant were going to 
approach and rob the drug house located on Avenue J, Holloway had no idea that 
they were going to do so because they had only discussed buying drugs in front 
of Holloway and had not discussed robbing the drug house. Richie asserted that 
there had never been any discussion of any killing in connection with the 
robbery. He stated that Holloway drove them to the house on Avenue J, let them 
out, and parked and waited for them. According to Richie, he knew that Appellant 
had a .25 caliber gun because he had obtained it for him. Richie testified that 
Appellant went to the front door of the house on Avenue J while Richie acted as 
a lookout. Upon hearing the gunshot, he ran to the porch where he saw Appellant 
pointing a gun at Cooper and “telling him to give him the money.” When Appellant 
and Richie got back into the car, Richie testified that he asked Appellant why 
he shot Cooper and that Appellant stated, “[I]t happened.” Although Wade 
testified that Appellant and Richie told him about their involvement in the 
shooting, Richie stated that he had never gone to Wade’s house and had never 
discussed anything about the shooting with Wade.
        The 
trial court found Appellant guilty of aggravated robbery with a deadly weapon 
and sentenced him to twenty years’ imprisonment. This appeal 
followed.
Sufficiency of the Non-Accomplice 
Evidence
        In 
his second point, Appellant contends that the testimony of the accomplices, 
Holloway and Richie, is insufficiently corroborated by other evidence to sustain 
the conviction. Appellant specifically argues that, without the accomplice 
testimony of Holloway and Richie, there is nothing to implicate him in the 
aggravated robbery.
Applicable Law
        A 
challenge of insufficient corroboration is not the same as a challenge of 
insufficient evidence to support the judgment as a whole. See Cathey v. 
State, 992 S.W.2d 460, 462-63 (Tex. Crim. App. 1999), cert. denied, 
528 U.S. 1082 (2000); Cantelon v. State, 85 S.W.3d 457, 460 (Tex. 
App.—Austin 2002, no pet.). In conducting a sufficiency review under the 
accomplice-witness rule, the reviewing court must eliminate the accomplice 
testimony from consideration and then examine the remaining portions of the 
record to ascertain if there is any evidence that tends to connect the accused 
with the commission of the crime. Solomon v. State, 49 S.W.3d 356, 367 
(Tex. Crim. App. 2001); Hernandez v. State, 939 S.W.2d 173, 176 (Tex. 
Crim. App. 1997). Article 38.14 of the Code of Criminal Procedure provides 
that
 [a] 
conviction cannot be had upon the testimony of an accomplice unless corroborated 
by other evidence tending to connect the defendant with the offense committed; 
and the corroboration is not sufficient if it merely shows the commission of the 
offense.  
Tex. Code Crim. 
Proc. Ann. art. 38.14 (Vernon 1979). Non-accomplice evidence does not, by 
itself, have to establish the guilt of the defendant beyond a reasonable doubt, 
but it does have to connect the defendant with the offense. McDuff v. 
State, 939 S.W.2d 607, 613 (Tex. Crim. App.), cert. denied, 522 U.S. 
844 (1997). While evidence that the defendant was in the company of the 
accomplice before, during, and after the commission of the offense is 
insufficient by itself to corroborate the testimony, evidence of such presence, 
coupled with other suspicious circumstances, may tend to connect the accused to 
the offense. Dowthitt v. State, 931 S.W.2d 244, 249 (Tex. Crim. 
App. 1996).
        It 
is not necessary for the non-accomplice evidence to directly link the accused to 
the commission of the offense. Cathey, 992 S.W.2d at 462. The accomplice 
witness rule is satisfied if there is some non-accomplice evidence that tends to 
connect the accused to the commission of the offense. Hernandez, 939 
S.W.2d at 176. “Tends to connect” has been defined as to “serve, contribute, or 
conduce in some degree or way to have a more or less bearing or effect on the 
question.” See Holladay v. State, 709, S.W.2d 194, 198 (Tex. Crim. App. 
1986). Furthermore, non-accomplice evidence which generally tends to prove the 
truth of an accomplice’s version of events is corroborative, even if it 
“concerns a mere detail, as opposed to a substantive link between the defendant 
and commission of the offense.” Beathard v. State, 767 S.W.2d 423, 430 
(Tex. Crim. App. 1989).
Application of Law to 
Facts
        Here, 
both accomplice testimony and non-accomplice evidence existed. Appellant 
correctly argues that the only non-accomplice evidence linking Appellant to the 
crime is the testimony of Wade. However, he also contends that Wade’s testimony 
is not credible or reliable, and therefore it was insufficient to corroborate 
Richie and Holloway’s testimony.
        A 
similar argument regarding weak and uncertain corroborating testimony has been 
rejected by our court of criminal appeals. See Cathey, 992 S.W.2d at 462. 
While the testimony of Wade was contradicted by other witnesses, including an 
accomplice-witness, and may provide an extremely weak tendency to connect 
Appellant with the offense, our function is not to perform a sufficiency review 
but to perform a literal review of the record to determine whether there is 
other evidence tending to connect the defendant with the offense. Id. at 
462-63. The corroboration must do more than tend to prove that a crime was 
committed; corroborating evidence must tend to connect the particular person 
charged to the crime. See Tex. 
Code Crim. Proc. Ann. art. 38.14.
        Here, 
the State’s case rested substantially on the testimony of Richie and Holloway. 
Eliminating their testimony leaves very little evidence that could adequately 
corroborate their testimony. However, this is not to say there was no evidence, 
outside Richie’s and Holloway’s testimony. Appellant’s argument that the 
testimony of Wade is weak, tainted, or unreliable is misplaced because our 
search is for literal evidence, not strong, unimpeached, or untainted evidence. 
Id. Our evaluation should not intrude upon the fact finder’s role as the 
sole judge of the weight and credibility given to any witness’s testimony. 
Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Cain v. 
State, 958 S.W.2d 404, 407-08 (Tex. Crim. App. 1997); Guy v. State, 
No. 2-03-411-CR, 2005 WL 375296, at *4 (Tex. App.—Fort Worth, Feb. 17 2005, no 
pet.). The fact finder alone decides what weight to place on contradictory 
testimonial evidence. Cain, 958 S.W.2d at 408-09. Although the evidence, 
without Wade’s testimony, may have been insufficient to show Appellant’s guilt, 
it was, nevertheless, sufficient to connect Appellant to the offense. Because 
Appellant’s argument rests on the supposition that Wade’s testimony should be 
disregarded, which we will not do, we overrule Appellant’s second 
point.
Legal And Factual 
Sufficiency
        In 
Appellant’s first point, he argues that the evidence was legally insufficient to 
support his conviction for aggravated robbery. Regarding Appellant’s third 
point, we address the factual sufficiency of the evidence.[8]
        In 
reviewing the legal sufficiency of the evidence to support a conviction, we view 
all the evidence in the light most favorable to the judgment in order to 
determine whether any rational trier of fact could have found the essential 
elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 
U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Ross v. State, 133 S.W.3d 
618, 620 (Tex. Crim. App. 2004).
        This 
standard gives full play to the responsibility of the trier of fact to resolve 
conflicts in the testimony, to weigh the evidence, and to draw reasonable 
inferences from basic facts to ultimate facts. Jackson, 443 U.S. at 319, 
99 S. Ct. at 2789. The trier of fact is the sole judge of the weight and 
credibility of the evidence. See Tex. Code Crim. Proc. Ann. art. 38.04 
(Vernon 1979); Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 
2000). Thus, when performing a legal sufficiency review, we may not re-evaluate 
the weight and credibility of the evidence and substitute our judgment for that 
of the fact finder. Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 
1999), cert. denied, 529 U.S. 1131 (2000). We must resolve any 
inconsistencies in the evidence in favor of the judgment. Curry v. State, 
30 S.W.3d 394, 406 (Tex. Crim. App. 2000).
        In 
reviewing the factual sufficiency of the evidence to support a conviction, we 
are to view all the evidence in a neutral light, favoring neither party. See 
Zuniga v. State, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004). The only 
question to be answered in a factual sufficiency review is whether, considering 
the evidence in a neutral light, the fact finder was rationally justified in 
finding guilt beyond a reasonable doubt. Id. at 484. There are two ways 
evidence may be factually insufficient: (1) the evidence supporting the verdict 
or judgment, considered by itself, is too weak to support the finding of guilt 
beyond a reasonable doubt; or (2) when there is evidence both supporting and 
contradicting the verdict or judgment, weighing all of the evidence, the 
contrary evidence is so strong that guilt cannot be proven beyond a reasonable 
doubt. Id. at 484-85. “This standard acknowledges that evidence of guilt 
can ‘preponderate’ in favor of conviction but still be insufficient to prove the 
elements of the crime beyond a reasonable doubt.” Id. at 485. In other 
words, evidence supporting a guilty finding can outweigh the contrary proof but 
still be insufficient to prove the elements of an offense beyond a reasonable 
doubt. Id.
        In 
performing a factual sufficiency review, we are to give deference to the fact 
finder’s determinations, including determinations involving the credibility and 
demeanor of witnesses. Id. at 481; Cain, 958 S.W.2d at 407 We may 
not substitute our judgment for that of the fact finder’s. Zuniga, 144 
S.W.3d at 482.
        A 
proper factual sufficiency review requires an examination of all the evidence. 
Id. at 484, 486-87. An opinion addressing factual sufficiency must 
include a discussion of the most important and relevant evidence that supports 
the appellant’s complaint on appeal. Sims v. State, 99 S.W.3d 600, 603 
(Tex. Crim. App. 2003).
        To 
support Appellant’s contention that the evidence is legally and factually 
insufficient to sustain his aggravated robbery conviction, Appellant points out 
that, with the exception of Holloway’s and Richie’s testimonies, none of the 
other witnesses could identify him as an individual involved in the shooting. 
Additionally, Wade’s testimony, regarding Appellant’s admission to shooting 
Cooper, was impeached and unreliable. However, when reviewing legal and factual 
sufficiency of the evidence, we consider all of the evidence, including 
accomplice-witness testimony.
        Richie 
testified that he and Appellant went to the drug house with the intention of 
committing a robbery, that he heard two gunshots, and that he saw Appellant 
pointing a gun at Cooper and demanding money. Holloway testified that he drove 
Appellant and Richie to the house on Avenue J where the robbery occurred. The 
non-accomplice evidence of Wade and Lacy discussed above corroborates Richie’s 
and Holloway’s testimonies. While some witnesses testified to different versions 
regarding some of the events, the trial court was free to evaluate the 
credibility and demeanor of the witnesses. See Cain, 958 S.W.2d at 
407.
        Based 
on the evidence and applying the appropriate standards of review, a reasonable 
trier of fact could have concluded beyond a reasonable doubt that Appellant 
committed the offense of aggravated robbery. Furthermore, the trial court’s 
judgment was not so against the weight of the evidence as to be clearly wrong 
and unjust. See Johnson, 23 S.W.3d at 6-7. Accordingly, we hold that the 
evidence is legally and factually sufficient to support Appellant’s conviction 
for aggravated robbery. We overrule Appellant’s first and third 
points.
Law of Parties
        In 
his fourth point, Appellant contends that the State should have pled a parties 
theory in the indictment. To preserve a complaint for our review, a party must 
have presented to the trial court a timely request, objection, or motion that 
states the specific grounds for the desired ruling if they are not apparent from 
the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); Mosley v. 
State, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g), cert. 
denied, 526 U.S. 1070 (1999). Further, the trial court must have ruled on 
the request, objection, or motion, either expressly or implicitly, or the 
complaining party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); Mendez v. 
State, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).
        Appellant 
contends, for the first time on appeal, that the indictment failed to put him on 
notice as to the manner and means of criminal responsibility on which the state 
relied to establish Appellant’s culpability. Because Appellant failed to timely 
object to the indictment, he has waived any error as to defects in the 
indictment. See Tex. Code Crim. 
Proc. Ann. art. 1.14(b) (Vernon Supp. 2004-05). We overrule Appellant's 
fourth point.
Conclusion
        Having 
overruled Appellant’s four points on appeal, we affirm the trial court’s 
judgment.
      
                                                                  PER 
CURIAM      
PANEL B: HOLMAN, DAUPHINOT, and GARDNER, 
JJ. 
DO NOT PUBLISH
Tex. R. App. 
P. 47.2(b) 
DELIVERED: April 14, 2005


 
NOTES
1.  See Tex. R. 
App. P. 47.4.
2.  The record reveals that Appellant also goes by the nickname 
“Skeet.”
3.  Pat Henz, who was the crime scene officer, testified that 
blood samples were taken from the scene but that he did not know if those 
samples had ever been tested.
4.  However, according to Richie’s testimony, he had never been 
with Appellant at Wade’s house.
5. Wade testified that Appellant did most of the talking but that 
Richie agreed with Appellant’s explanation of what happened, although he did not 
provide specific details.
6.  Wade’s testimony on direct and cross examination is unclear 
and contradictory as to how he knew Cooper was working at the drug house located 
on Avenue J.
7.  Vicki Duffy is the mother of Wade’s child. Wade testified 
that Duffy had received information from Appellant’s girlfriend that there was a 
gun at Appellant’s house and that Appellant wanted him to look for it under the 
refrigerator at his house. Wade stated that he went to Appellant’s house and 
looked under the refrigerator, where he claimed to have seen the handle of a 
small pistol. However, Wade testified that he did not remove the gun from under 
the refrigerator. Duffy testified that she never received any message regarding 
where the gun might be located and that she never told Wade to go look for the 
gun.
8.  Appellant’s brief asserts “[t]he Appellant should be granted 
a new trial because the greater weight and preponderance of the credible 
evidence favors acquittal so that the judgment finding him guilty of aggravated 
robbery is manifestly unjust.” We liberally construe Appellant’s point as 
challenging the factual sufficiency of the evidence. See Tex. R. App. P. 
38.9.