GUY V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-03-411-CR

LENISKIE TYREE GUY APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

INTRODUCTION

Appellant was indicted for possession of a controlled substance, cocaine, of more than four grams but less than two hundred grams with the intent to deliver.  Appellant pleaded not guilty and was tried to a jury, which returned a guilty verdict.  The court sentenced Appellant to twenty-five years’ confinement.  In four issues, Appellant argues that (1) the evidence is factually insufficient to prove Appellant possessed cocaine; (2) the evidence is factually insufficient to prove Appellant intended to deliver cocaine; (3) the trial court erred in admitting items into evidence that had no connection with Appellant and therefore were irrelevant; and (4) the trial court erred in overruling Appellant’s objection to the State’s argument striking at Appellant over his attorney’s shoulder.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On December 3, 2002, Fort Worth police officers executed a search warrant at a duplex located in Fort Worth.  Narcotics detective T.L. Howard received information that drugs were being sold from the duplex in question.  Based on this tip, Detective Howard made a drug buy from the location using a confidential informant.  Detective Howard used this information to obtain the search warrant for the location. 

Detective Howard conducted surveillance of the location before executing the warrant, during which time he observed “quite a bit of traffic flow” in and out of the location and observed a male dressed in red out front directing vehicle and pedestrian traffic, whom he identified at trial as Appellant.  Detective Howard described that Appellant was in front of the residence and seemed to be directing the activity and directing people “where to park to go into the residence.”  Detective Howard stated that during a thirty to forty minute period, he observed at least twenty people enter the residence, typically staying only a short period of time.  In Detective Howard’s opinion, based on his six years’ experience in narcotics investigation, this activity was typical activity seen at a “crack house.”  After conducting surveillance at the location on the morning of December 3, 2002, Detective Howard proceeded to the SWAT office to conduct a briefing with the officers who would be executing the search warrant.  Detective Howard explained that SWAT officers executed the search warrant because other police officers had encountered an armed individual at the location in the past and gang members were known to frequent the location.  

Detective Howard testified that as SWAT executed the warrant, he and other officers remained away from the scene until SWAT indicated the residence was secure.  Once secured, Detective Howard went inside the residence and began to collect evidence.  Appellant had already been placed under arrest and was seated on a couch.  Detective Howard testified that he collected a “baggie that contained crack rocks” that was on the floor within a foot or less of Appellant’s feet.  Detective Howard also collected a set of digital scales and a couple of razor blades from a counter directly above Appellant’s shoulder and within Appellant’s reach.  Detective Howard testified that digital scales and razor blades are typically found at locations where narcotics are packaged and sold.  He also recovered a dark powdery substance and a light cream powdery substance, and although they did not test positive for a controlled substance, he testified that it was typical to find other substances such as these that are used to mix with narcotics to increase their bulk.  Additionally, Detective Howard recovered a “baggie of marijuana” from Appellant’s front jacket pocket.  

Furthermore, Detective Howard testified that a man and woman, who had arrived together in the same vehicle, were detained outside the location.  As SWAT arrived, the woman was exiting the location, and the man was sitting in a vehicle outside the location.  The woman was in possession of a glass crack pipe, and Detective Howard recovered a Brillo pad, glass pipe, push rod, and a yellow baggie containing an unidentified residue from the vehicle.  Detective Howard stated that the Brillo pad, glass pipe, and push rod are typically used in smoking crack. 

SWAT officer Ken Clowers was also present at the location when the warrant was served.  Officer Clowers stated that he was assigned to provide cover for the two officers who would be forcing entry into the location and that he was the first member of the SWAT team to approach the house.  He stated that as he approached, a woman was exiting the residence, and he pulled her away from the door.  Officer Clowers stated that the door to the location was open; therefore, he was the first person to make entry into the residence.   

Officer Clowers testified that upon entering, he saw Appellant sitting on a couch.  Officer Clowers stated that Appellant began to rise from the couch and made a throwing motion, dropping a clear plastic baggie out of his hand onto the floor.  Officer Clowers stated that he approached Appellant and pulled him to the ground.  Officer Clowers testified that he had constant visual contact of Appellant from the time he entered the location through the time he saw Appellant drop the baggie of crack, approached Appellant, and pulled him to the ground.  Officer Clowers stated that, in his professional opinion as a police officer, Appellant was in possession of the baggie of crack.  Further, Officer Clowers stated that he stood with Appellant and the baggie of crack until Detective Howard arrived and took possession of the narcotics.  In court, Officer Clowers identified the clear plastic baggie containing crack that was recovered from the floor by Detective Howard as the baggie he saw Appellant drop from his hand as Officer Clowers entered the location. 

H.G. Tebay, Assistant Commander of the Metro Narcotics Intelligence Unit, testified about the narcotics and evidence recovered from the location and described how this evidence was common to the drug trade.  He testified in response to a hypothetical posed by the State that the type of digital scale recovered, along with the razor blades, would indicate to him that these instruments were used in cutting up a larger amount of crack cocaine.  He testified that the amount of crack recovered, which was over fifteen grams, would not be in the possession of a “street user” because a user typically possessed approximately a tenth of a gram.  He concluded that in his opinion the amount of crack cocaine in this case would be a dealer amount. 

The State next called Stacey Smith, a forensic scientist with the Fort Worth Police Department crime lab.  She testified that she tested the substance in the baggie that was recovered from the location and confirmed that it tested positive for cocaine.  She described that she conducted a presumptive test on every piece of the material recovered in the baggie and confirmed that the presumptive test indicated the possibility of cocaine.  Ms. Smith then stated that she tested four pieces of the substance in the baggie using a gas chromatograph, and each piece tested positive for the presence of cocaine.  Ms. Smith also testified that these four pieces weighed 6.13 grams and that the total weight of the crack was 15.43 grams. 

FACTUAL SUFFICIENCY

Standard of Review

In two points, Appellant argues that the evidence was factually insufficient to prove that he possessed cocaine and that he intended to deliver cocaine. 

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
. at 484.  There are two ways evidence may be factually insufficient:  (1) the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
. at 484-85.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
. at 485.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
. 

In performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 at 481; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for that of the fact finder.  
Zuniga, 
144 S.W.3d at 482.  

A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at 484, 486-87.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

Possession

An accused commits an offense under the Texas Controlled Substances Act if he intentionally or knowingly possesses a controlled substance.  
Tex. Health & Safety Code Ann.
 § 481.115(a) (Vernon Supp. 2004-05).  A person possesses a substance when he exercises “actual care, custody, control, or management” over the substance.  
Tex. Penal Code Ann.
 § 1.07(a)(39) (Vernon 2003).  In order to establish the unlawful possession of a controlled substance, the State must prove two elements: (1) that the accused exercised care, control, and management over the contraband and (2) that the accused knew that the matter possessed was contraband.  
Deshong v. State
, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981); 
Hall v. State
, 86 S.W.3d 235, 240 (Tex. App.—Austin 2002, pet. ref’d)
; 
Grant v. State
, 989 S.W.2d 428, 433 (Tex. App.—Houston [14th Dist.] 1999, no pet.).  The issue is whether the evidence will support a reasonable inference that the defendant knowingly possessed the contraband.  
Dickerson v. State
, 866 S.W.2d 696, 700 (Tex. App.—Houston [1st Dist.] 1993, pet. ref’d); 
Jackson v. State
, 807 S.W.2d 387, 389 (Tex. App.—Houston [14th Dist.] 1991, pet. ref’d).  

When the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband.  
Deshong
, 625 S.W.2d at 329.  The factors to be considered in establishing an affirmative link include the following: (1) defendant’s presence when search warrant was executed; (2) whether the contraband was in plain view; (3) defendant's proximity to and the accessibility of the narcotic; (4) whether defendant was under the influence of narcotics when arrested; (5) whether defendant possessed other contraband when arrested; (6) whether defendant made incriminating statements when arrested; (7) whether defendant attempted to flee; (8) whether defendant made furtive gestures; (9) the presence of odor of the contraband; (10) the presence of other contraband or drug paraphernalia; (11) defendant's ownership or right to possession of the place where the controlled substance was found; and (12) whether the place the drugs were found was enclosed.  
Hyett v. State
, 58 S.W.3d 826, 830 (Tex. App.—Houston [14th Dist.] 2001, pet. ref’d); 
Jones v. State
, 963 S.W.2d 826, 830 (Tex. App.—Texarkana 1998, pet. ref’d); 
Chavez v. State
, 769 S.W.2d 284, 288-89 (Tex. App.—Houston [1st Dist.] 1989, pet. ref’d).

Based on our review of the record, we conclude that the evidence was factually sufficient to prove Appellant possessed cocaine.  Officer Clowers personally observed Appellant dropping the baggie of crack cocaine out of his hand; he maintained a constant visual of Appellant and the baggie; and he identified the baggie in court as the same one he saw on the day in question.  This evidence alone affirmatively links Appellant to the cocaine.  
See Dickerson
, 866 S.W.2d at 701 (holding that testimony of officer who saw defendant holding crack pipe was sufficient to affirmatively link defendant to the contraband); 
Jarrett v. State
, 818 S.W.2d 847, 848-49 (Tex. App.—Houston [1st Dist.] 1991, no pet.) (holding evidence that Appellant was arrested holding crack pipe that contained cocaine residue was sufficient to prove Appellant possessed cocaine).  And there were additional affirmative links, including evidence that (1) the baggie was within Appellant’s proximity and accessible to him; (2) marijuana was found on Appellant; and (3) drug paraphernalia was recovered within Appellant’s reach.

Appellant presented the testimony of Janecia Dansby to contradict Officer Clowers’s testimony.  Ms. Dansby, who was present inside the location when the warrant was executed, testified that she did not see Appellant in possession of the baggie, nor did she observe him drop a baggie on the floor.  Additionally, on cross-examination, Officer Clowers acknowledged that he did not indicate on his report that he had observed Appellant drop the baggie of crack.  But he did reiterate that he told Detective Howard he had seen Appellant drop the baggie.  Ultimately, the jury was the sole judge of the credibility of the witnesses, and it was their duty to resolve the conflicts in the evidence.  
Cass v. Stephens
, No. 08-97-00582-CV, 2004 WL 1926411, at *20 (Tex. App.—El Paso Aug. 31, 2004, no pet. h.).  

Based on our review of the record, we hold that the evidence was factually sufficient to establish that Appellant was in possession of cocaine.  Thus, Appellant’s point is overruled.

Intent to Deliver

 Intent to deliver may be proved by circumstantial evidence, including evidence surrounding its possession.  
Rhodes v. State
, 913 S.W.2d 242, 251 (Tex. App.—Fort Worth 1995), 
aff’d
, 945 S.W.2d 115 (Tex. Crim. App. 1997), 
cert. denied
, 522 U.S. 894 (1997).  Additionally, intent to deliver may be inferred from the quantity of drugs possessed and from the manner in which they are packaged.  
Id
.  Courts have considered several factors in determining such intent, including the following:  (1) the nature of the location where the defendant was arrested; (2) the quantity of drugs the defendant possessed; (3) the manner of packaging of the drugs; (4) the presence or absence of drug paraphernalia (for use or sale); (5) whether the defendant possessed a large amount of cash in addition to the drugs; and (6) the defendant's status as a drug user.  
Jordan v. State
, 139 S.W.3d 723, 726 (Tex. App.—Fort Worth 2004, no pet.).  
Expert testimony may be introduced to prove intent to deliver.  
Id
.

As fully set out above, the State introduced the following evidence to establish Appellant’s intent:  (1) the testimony of Detective Howard, who testified that in his opinion, this location was a “crack house”; (2) testimony regarding the traffic flow in and out of the residence; (3) testimony that Appellant was seen directing traffic to the location; (4) evidence that the cocaine recovered from Appellant had a total weight of 15.43 grams, which in Officer Tebay’s opinion constituted a dealer amount; (5) evidence of drug paraphernalia located inside the residence within Appellant’s reach and on a person exiting the residence; and (6) marijuana found inside Appellant’s jacket pocket. 

Appellant argues there is evidence contradicting the State’s proof.  Appellant states that only 6.13 grams of the substance in the baggie was positively tested and identified as crack.  However, the State is not required to test each individual piece in the baggie to confirm the presence of cocaine.  
See Melton v. State
, 120 S.W.3d 339, 344 (Tex. Crim. App. 2003) (holding that under the new Health and Safety Code definition, the State is no longer required to determine the amount of controlled substance and the amount of adulterant and dilutant that constitute the mixture).  Additionally, Appellant points to the fact that no money was recovered at the location; he was not identified as a drug dealer, nor was he identified as being involved in prior drug transactions at the location; no drug paraphernalia was found on him; no weapons were found at the location; and no one saw him deliver anything.   Appellant also points to the testimony of his sister, who stated that she took Appellant to the location at approximately 2:30 in the afternoon, to show that he was not directing traffic in front of the residence.  However, Detective Howard testified that he observed Appellant directing traffic that morning and Appellant’s sister admitted that she had no knowledge of what Appellant was doing during that time.  Finally, Appellant points us to the testimony of his sister and Janecia Dansby, who both testified that, in their opinions, this residence did not have a reputation as a “crack house.”  But this testimony was contradicted by other evidence as detailed above.

When conducting a factual sufficiency review, we must give deference to the jury’s determination of the credibility and demeanor of the witnesses.  
Zuniga
, 144 S.W.3d at 481.  In addition, when faced with conflicting evidence, the appellate court presumes the trier of fact resolved any conflict in support of the verdict.  
Fuentes v. State
, 991 S.W.2d 267, 271 (Tex. Crim. App.),
 cert. denied
, 528 U.S. 1026 (1999).  Based on our review of the record, we conclude that when considering all of the evidence in a neutral light, the jury was rationally justified in finding beyond a reasonable doubt that Appellant possessed cocaine with the intent to deliver.  Thus, Appellant’s point is overruled.

ADMISSION OF EVIDENCE

Appellant also argues that the trial court erred in admitting items into evidence that he contends had no connection to him and were therefore irrelevant.   

An appellate court reviews a trial court’s decision on whether to admit or exclude evidence under an abuse of discretion standard of review.  
Green v. State
, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996), 
cert. denied
, 520 U.S. 1200 (1997); 
Montgomery v. State
, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990).  A trial court’s determination on admissibility of evidence will not be disturbed unless there is a clear abuse of discretion.  
Werner v. State
, 711 S.W.2d 639, 643 (Tex. Crim. App. 1986).  The trial court’s ruling will be upheld as long as it is within the “zone of reasonable disagreement.”  
Montgomery
, 810 S.W.2d at 391.

A trial court’s determination of relevancy is not disturbed absent an abuse of discretion.  
Id
.  Evidence is relevant if it has any tendency to make the existence of any consequential fact more or less probable than it would be without the evidence.  
Tex. R. Evid.
 401.  Intent to deliver may be proved by circumstantial evidence, including evidence surrounding its possession.  
Rhodes,
 913 S.W.2d at 251
.

At trial, the State introduced drug paraphernalia into evidence that was seized from an occupied vehicle parked outside the residence.  This evidence consisted of a Brillo pad, push rod, and glass pipe, instruments identified by Detective Howard as typically used to smoke crack.  Appellant objected to this evidence on the basis that it was irrelevant to the offense charged against him and it had no connection with any individuals inside the residence.  The trial judge asked if Appellant objected on any other basis, but Appellant objected only on the basis of relevance.  The State argued that it was circumstantial evidence that “there’s drug delivery going on” and the paraphernalia showed that the person in the vehicle was a customer.  The trial court initially sustained the objection.  Subsequently, the State connected the occupant in the vehicle to the woman who had been detained exiting the location as SWAT prepared to enter.  Detective Howard testified that the woman was associated with the man who was in the car and that she was found in possession of a crack pipe. After the State connected the man in the vehicle with the woman who had entered the residence, the State reoffered the items into evidence.  Again, Appellant objected, but he was overruled by the trial court. 

Appellant argues that the evidence located in the vehicle was irrelevant because it was not shown to have any connection with Appellant.  However, the State demonstrated that the evidence was relevant to the issue of Appellant’s intent to deliver by connecting the woman in the residence to the vehicle in which the contraband was found.  The State argues that the drug paraphernalia recovered from the woman and the vehicle indicated the presence of customers who were at the residence to purchase crack cocaine.  With the connection between the contraband in the vehicle and the residence, along with the scales, razor blades, and testimony that Appellant was seen directing traffic in front of the location, this evidence did have a tendency to prove that Appellant possessed crack cocaine with intent to deliver.  Accordingly, the court was within its discretion in finding the evidence relevant.  

Under the rules of evidence, once the proponent of an item of evidence shows that the evidence is logically relevant to some issue in the trial under Rule 401, it is admissible unless the opponent of the evidence demonstrates that it should be excluded because of some other provision, whether constitutional, statutory, or evidentiary.  
Montgomery
, 810 S.W.2d at 376.  In his brief, Appellant refers to Rule 403, which provides that “[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.”  
Tex. R. Evid.
 403.  However, Appellant failed to specifically make a Rule 403 objection at trial, instead relying solely on relevance.  Because Appellant did not raise a separate trial objection to the evidence based upon Rule 403, this argument is not properly before this court.  
Bell v. State
, 938 S.W.2d 35, 49 (Tex. Crim. App. 1996),
 cert. denied
, 522 U.S. 827(1997); 
see also Montgomery
, 810 S.W.2d at 388 (holding that objection based upon Rule 403 is required before trial court will balance probativeness and prejudice); 
Long v. State
, 823 S.W.2d 259, 271 (Tex. Crim. App. 1991) (expressing that when admitting evidence, the trial judge does not sua sponte engage in balancing the probative value against the prejudice but does so only upon sufficient objection invoking Rule 403).

We therefore hold that the trial court did not abuse its discretion in admitting evidence of the contraband found in the vehicle outside the location.  Thus, Appellant’s point is overruled.

JURY ARGUMENT

Additionally, Appellant argues that the trial court erred in overruling his objection to the State’s argument to the jury that he contends struck at him over his attorney’s shoulder.  During its closing argument, the State made the following remarks:

The scales are there.  The scales that nobody sees. None of the defense witnesses got a chance to see when they’re sitting there on the countertop with the razor blades, sitting around a coffee table with a pot on it, obstructing view somewhat, sitting there for 15 or 20 minutes and nobody knows anybody’s names.  Folks, that’s a crack house.  Clear as day.  It’s a crack house. 

The part of society you’re in now, you have the last line.  You get to go back and decide whether or not he’s thumbs up or thumbs down guilty for delivery.  It’s a difficult decision because the power’s in your hands.  You get to go back and tell him what he already knows, what Ms. Johnson knows, what Mr. Snell knows, what all his friends back here know, that 3837 Waldorf in Fort Worth, Tarrant County, Texas, is a crack house.

Appellant’s counsel, Mamie Johnson, objected on the basis of “throwing my name in it and the other attorney as to what we know.”  The objection was overruled.  Appellant argues that this statement was an accusation that Appellant’s counsel knowingly presented perjured testimony and further contends that the location did not have a reputation as a crack house.  Appellant argues that this comment prejudiced the jury because it conveyed to them that Appellant’s counsel knew the location was a crack house and that counsel would do anything, even suborn perjury, to obtain an acquittal of their client. 

There are four generally permissible areas of jury argument: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) pleas for law enforcement.  
Felder v. State
, 848 S.W.2d 85, 94-95 (Tex. Crim. App. 1992)
, 
cert. denied
, 510 U.S. 829 (1993); 
Alejandro v. State
, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973)
.  Generally, a remark that strikes at the defendant through his counsel is impermissible because such attacks only inflame the minds of the jury to the defendant’s detriment.  
Wilson v. State
, 938 S.W.2d 57, 62 (Tex. Crim. App. 1996), 
abrogated on other grounds by
 
Motilla v. State
, 78 S.W.3d 352 (Tex. Crim. App. 2002); 
Coble v. State
, 871 S.W.2d 192, 205 (Tex. Crim. App. 1993); 
McMurrough v. State
, 995 S.W.2d 944, 947 (Tex. App.—Fort Worth 1999, no pet.).  Reviewing courts are especially disturbed about final arguments that result in uninvited and unsubstantiated accusations of improper conduct directed at a defendant’s attorney.  
McMurrough
, 995 S.W.2d at 947.

Practically speaking, it is difficult to articulate a precise rule to determine when a prosecutor is striking over the defense counsel's shoulders and when he is making a proper jury argument.  
Phillips v. State
, 130 S.W.3d 343, 356 (Tex. App.—Houston [14th Dist.] 2004, State’s pet. granted, appellant’s pet. ref’d).  However, a prosecutor risks improperly striking at a defendant over the shoulder of counsel when the argument refers to defense counsel personally and when the argument explicitly impugns defense counsel’s character.  
Mosley v. State
, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998), 
cert. denied
, 526 U.S. 1070 (1999).  In the present case, the State injected Appellant’s counsel personally into its closing argument.  We do not agree with the State that this argument was invited by Appellant’s counsel.  Further, this statement was outside the bounds of permissible jury argument.  
See
 
id
. (finding State’s argument that referred to counsel personally and suggested counsel wanted to divert the jury from the truth was improper); 
McMurrough
, 995 S.W.2d at 947 (holding State’s argument that insinuated Appellant’s counsel improperly invented Appellant’s defense was improper because it was not based on evidence and it constituted an outside-the-record attack on defense counsel’s integrity).  Likewise, in the present case, the State’s argument brought into question Appellant’s counsel’s integrity and was not based on the evidence.  Thus, the argument was improper.

Having found that the argument was improper, we must determine whether the argument constituted reversible error.  
Mosley
, 983 S.W.2d at 259; 
McMurrough
, 995 S.W.2d at 947.  Improper comments on defense counsel’s honesty do not amount to a constitutional violation.  
Mosley
, 983 S.W.2d at 259; 
McMurrough
, 995 S.W.2d at 947.  Such comments constitute “other errors” within Rule 44.2(b).  
Tex. R. App. P.
 44.2(b); 
Mosley
, 983 S.W.2d at 259.  A nonconstitutional error “that does not affect substantial rights must be disregarded.”  
Tex. R. App. P.
 44.2(b); 
Martinez v. State
, 17 S.W.3d 677, 692 (Tex. Crim. App. 2000).   Even when arguments exceed the boundaries of permissible arguments, they will not constitute reversible error unless they are manifestly improper, violate a mandatory statute, or inject new, harmful facts into the case.  
Wesbrook v. State
, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000), 
cert. denied
, 532 U.S. 944 (2001).  
In determining whether Appellant’s substantial rights were affected, we consider 
(1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor’s remarks); (2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction).  
Martinez
, 17 S.W.3d at 692-93
; 
Mosley
, 983 S.W.2d at 259.  

In analyzing the State’s comment under these factors, we conclude that the improper statement was harmless.  The State made one reference to Appellant’s counsel and did not explicitly accuse them of lying.  Nor do we believe that this comment rises to the level of an accusation that Appellant’s counsel presented perjured testimony.  Additionally, the State did not make this statement again, nor did it make any other reference to Appellant’s counsel.  
See Rudd v. State
, 921 S.W.2d 370, 372 (Tex. App.—Texarkana 1996, pet. ref’d) (stating that improper comment was made briefly and only once and, therefore, was likely to have had little effect on the jury); 
Holmes v. State
, 962 S.W.2d 663, 675 (Tex. App.—Waco 1998, pet. ref’d, untimely filed) (holding that improper jury argument was harmless when State did not repeat the argument, and it offered overwhelming evidence establishing guilt).

Appellant relies on several cases to support his argument that this improper comment warrants reversal.
(footnote: 1)  However, those cases involved egregious accusations, which we conclude is not the case here. 
 Therefore, while we do not condone the complained-of argument, we hold that, when considered in context, the argument did not amount to severe misconduct on the part of the State. 

The second factor is easily dispensed with, as no curative instruction was given because the objection was overruled.  The third factor favors the State.  As was discussed under our analysis of the factual sufficiency of the evidence, there was ample evidence, absent this comment by the State, that Appellant possessed crack cocaine with the intent to deliver.

After analyzing the improper statement, we conclude that the error did not affect Appellant’s substantial rights and that it was, therefore, harmless.  Thus, we overrule Appellant’s point.

CONCLUSION

Having overruled all Appellant’s points, we affirm the trial court’s judgment.

ANNE GARDNER

JUSTICE

PANEL B: HOLMAN, GARDNER and WALKER, JJ.

PUBLISH

DELIVERED:  February 17, 2005

FOOTNOTES
1:
See
 
Gomez v. State
, 704 S.W.2d 770, 771-72 (Tex. Crim. App. 1985) (finding accusation that defense manufactured evidence constituted reversible error); 
Fuentes v. State
, 664 S.W.2d 333, 335-37 (Tex. Crim. App. 1984) (concluding argument that defense counsel was “in bad faith like usual” and that evidence of police misconduct was “garbage” warranted reversal);
 Bell v. State
, 614 S.W.2d 122, 123 (Tex. Crim. App. 1981) (deciding statement that defense counsel’s duty is to get his client off, even if that means putting on witnesses who are lying, warranted mistrial); 
Lewis v. State
, 529 S.W.2d 533, 534 (Tex. Crim. App. 1975) (finding statement that defense counsel had not taken oath to seek justice and that they did not want truth to come out required reversal); 
Boyde v. State
, 513 S.W.2d 588, 591 (Tex. Crim. App. 1974) (determining statement by prosecutor that the jury would never find him accepting stolen money and stolen merchandise as a fee and “trying to get a murder–“ constituted reversible error); 
Bray v. State
, 478 S.W.2d 89, 89-90 (Tex. Crim. App. 1972) (holding that prosecutor’s comment that he was grateful he did not have to make his living representing the likes of defendant constituted reversible error); 
Jones v. State
, 205 S.W.2d 590, 592-93 (Tex. Crim. App. 1947) (deciding argument that defense counsel had fabricated the defense required reversal).  
But see Mosley
, 983 S.W.2d at 258-60 (holding that closing statement that implied defense counsel wanted to divert jury from the truth was “mildly inappropriate” and was not reversible error because the statement did not directly accuse defense counsel of lying or manufacturing evidence); 
Brantley v. State
, 48 S.W.3d 318, 330-31 (Tex. App.—Waco 2001, pet. ref’d) (finding that statements that defense counsel wanted jury to “chase rabbits” and warning jury to not fall for defense “tricks” were harmless).