KIDD V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-03-359-CR

REBECCA JOY KIDD A/K/A APPELLANT

REBECCA JOY BARTLETT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellant was indicted in count one for manufacturing a controlled substance, methamphetamine, of more than one gram but less than four grams and in count two of possessing a chemical substance, anhydrous ammonia, with intent to manufacture a controlled substance, methamphetamine.  Before trial, pursuant to an agreement with defense counsel, the State amended count one of the indictment to allege possession of a controlled substance, methamphetamine, of more than one gram but less than four grams.  The State dismissed count two and proceeded only on the possession charge.  Appellant pleaded not guilty and after a trial on the merits, a jury found Appellant guilty. 

At punishment, Appellant pleaded true to the enhancement paragraph that alleged a prior conviction for possession with intent to deliver a controlled substance, methamphetamine, of one gram or more but less than four grams.  Additionally, Appellant pleaded true to two habitual paragraphs that alleged prior convictions for possession with intent to deliver a controlled substance, methamphetamine, of more than four grams but less than two hundred grams and possession of a controlled substance, amphetamine, of less than twenty-eight grams.  The jury assessed Appellant’s punishment at seventy-five years’ confinement. 

Appellant’s court-appointed counsel has filed an 
Anders
 brief asserting that there are no grounds that could be argued successfully on appeal.  
Anders v. California
, 386 U.S. 738, 87 S. Ct. 1396 (1967).  Appellant did not file a pro se brief.  We will grant counsel’s motion to withdraw and affirm the trial court’s judgment.

II.  Factual and Procedural Background

Deputy Robert Young of the Hood County Sheriff’s Office testified that on January 22, 2003 he was working patrol on the night shift.  He stated that he had received a report of a possible chemical odor coming from a residence on Cleveland Road and he went to the area to investigate.  Deputy Young was able to smell a strong chemical odor and followed this odor to 512 Cleveland Road.  Deputy Young described the odor as smelling like ether and he stated that he was familiar with this smell through training he had received in connection with his work with the STOP Narcotics Task Force.  Deputy Young walked up the driveway at 512 Cleveland Road and was met by a woman on the porch whom he identified as Appellant.  

According to Deputy Young, Appellant acknowledged the odor but indicated to him that she did not know where it was coming from.  Deputy Young stated that Appellant indicated that the house was hers and that two males that were inside were visiting.  Appellant signed a written consent to search form and informed Deputy Young that she had a small amount of marijuana in her bedroom, which was recovered.  Deputy Young then proceeded into the backyard and traced the odor to a shed.  Deputy Young described the odor as “overwhelming” when he got to the front door of the shed; therefore, he notified the fire department and the STOP Narcotics Task Force in order to have them dismantle the laboratory that he discovered inside the shed.  At this point the occupants of the residence were secured while a search warrant was obtained to search the shed. 

Roger Deeds testified that he responded to 512 Cleveland Road in response to Deputy Young’s request.  Deeds stated that at the time he was a narcotics investigator with the Hood County Sheriff’s Office and was assigned to the STOP Narcotics Task Force.  Deeds was also working in the capacity of a volunteer fire marshal.  Deeds stated that when he arrived at the location he noticed a strong smell of ether and anhydrous ammonia, which he testified is common to a methamphetamine lab.   

Deeds arrived at about the same time as the fire department and because he felt there was a high risk to everyone’s safety, he put on a self-contained breathing apparatus and protective gear and entered the shed behind the residence.  Inside the shed he found a “propane-type tank” containing anhydrous ammonia, which was leaking, what he described as a “clandestine manufactured” air conditioner blower to vent fumes from the shed, and “other items associated with a clandestine methamphetamine laboratory.”  Deeds testified that after he determined that the shed was not in immediate danger of exploding, he obtained a search warrant for the property. 

Once Deeds returned with the warrant, he began his search in the master bedroom, where he located a social security card belonging to Appellant and a dresser that contained men’s and women’s clothing.  Inside the dresser he found razor blades and a large quantity of small plastic baggies, which he testified are consistent with the distribution of narcotics.  Deeds also recovered two small baggies, one containing a white substance and one containing a tan colored substance from the dresser, which were sent to the lab for testing.  Additionally, Deeds recovered marijuana from night stands on both sides of the bed in the master bedroom. 

Deeds then proceeded to the kitchen where he found a tub containing a large quantity of Sudafed tablets,
(footnote: 2) which he described as the basic ingredient of methamphetamine.  Along with the pills were grinders and blenders that Deeds stated contained residue from Sudafed tablets.  Deeds stated that grinders and blenders are used to grind the Sudafed tablets into a powder.  Also found was a strainer, which is used to strain larger chunks of the powdered Sudafed, and this also contained residue of Sudafed tablets.  Deeds also recovered lithium batteries, which he stated are used to cause a reaction with the Sudafed and anhydrous ammonia to produce methamphetamine.  Deeds stated that the outer shell of a lithium battery is removed and the inner ribbon is taken out and it is the ribbon that is used to cause the reaction.  Deeds testified that along with new batteries, he found ribbons from lithium batteries suspended in some sort of liquid in the freezer.  The ribbons are suspended in a liquid, such as Coleman lantern fluid, in order to keep them from reacting with air.  Deeds also recovered numerous receipts for the purchase of Sudafed tablets, tubing, aqua salt, a gas can, coffee filters, and duct tape, all of which Deeds testified are typically associated with the manufacture of methamphetamine.  Along with these receipts, Deeds found a receipt containing Appellant’s name.  

Inside the shed Deeds recovered a gas can with tubing in it, a gas generator, propane tanks, tubing, Coleman fluid, a stirring spoon, funnel, and rubber gloves, all of which he described as being associated with a clandestine laboratory. 

Heather Linch, a chemist for the Texas Department of Public Safety was called to describe how methamphetamine is manufactured in clandestine laboratories and to testify as to the results of the chemical analysis of the narcotics seized from the location.  She testified that the tan colored powder substance weighed 1.09 grams and tested positive for methamphetamine.  She also testified that the white powder weighed 2.47 grams, but only tested positive for pseudoephedrine. 

The defense called Randy Freeman, who testified that he owned 512 Cleveland Road and at the time of the search it was rented by James Brandt, who moved in at the beginning of December.  He stated that he had moved out in September of 2002, but had left some personal items at the residence. Freeman testified that he had met Appellant at the rent house and had seen her there on a couple of occasions.  Freeman denied any knowledge of the illegal activities that were occurring at the residence. 

Few objections were made at trial
 and 
none of the rulings made by the trial court to the objections constituted reversible error or an abuse of discretion.

III.  The 
Anders
 Brief

Appellant’s court-appointed appellate counsel has filed a motion to withdraw as counsel and a brief in support of that motion.  In the brief, counsel avers that, in his professional opinion, this appeal is frivolous.  Counsel’s brief and motion meet the requirements of 
Anders
, 386 U.S. 738, 87 S. Ct. 1396, by presenting a professional evaluation of the record demonstrating why there are no arguable grounds for relief. 

Once Appellant’s court-appointed counsel files a motion to withdraw on the ground that the appeal is frivolous and fulfills the requirements of 
Anders
, this court is obligated to undertake an independent examination of the record and to essentially rebrief the case for Appellant to see if there is any arguable ground that may be raised on Appellant’s behalf.  
Stafford v. State
, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991).

IV.  Independent Review

A.  Pretrial

Our review of the record reveals no jurisdictional defects.  The trial court had jurisdiction over the case.  
See
 
Tex. Code Crim. Proc. Ann.
 art. 4.05 (Vernon 2005).  Further, the indictment conferred jurisdiction on the trial court and provided Appellant with sufficient notice.  
See
 Tex. Const.
 art. V, § 12; 
Duron v. State
, 956 S.W.2d 547, 550-51 (Tex. Crim. App. 1997).

B.  Guilt-Innocence Phase

Appellate counsel brings as possible points on appeal challenges to the legal and factual sufficiency of the evidence.  
In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to
 the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Ross v. State
, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004).

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
. at 484.  There are two ways evidence may be factually insufficient:  (1) the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
. at 484-85.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
. at 485.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
. 

In performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 at 481; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for that of the fact finder’s.  
Zuniga, 
144 S.W.3d at 482.  

A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at 484, 486-87.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

In order to establish the unlawful possession of a controlled substance, the State must prove two elements: (1) that the accused exercised care, control, and management over the contraband and (2) that the accused knew that the matter possessed was contraband.  
Deshong v. State
, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981); 
Guy v. State
, 160 S.W.3d 606, 612 (Tex. App.—Fort Worth 2005, pet. filed).  It is well established that drug possession need not be exclusive, and that an individual can possess drugs jointly with others.  
State v. Derrow
, 981 S.W.2d 776, 779 (Tex. App.—Houston [1st Dist.] 1998, pet. ref’d).  

When the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband.  
Deshong
, 625 S.W.2d at 329.  The factors to be considered in establishing an affirmative link include the following:  (1) defendant’s presence when search warrant was executed; (2) whether the contraband was in plain view; (3) defendant's proximity to and the accessibility of the narcotic; (4) whether defendant was under the influence of narcotics when arrested; (5) whether defendant possessed other contraband when arrested; (6) whether defendant made incriminating statements when arrested; (7) whether defendant attempted to flee; (8) whether defendant made furtive gestures; (9) the presence of odor of the contraband; (10) the presence of other contraband or drug paraphernalia; (11) defendant's ownership or right to possession of the place where the controlled substance was found; and (12) whether the place the drugs were found was enclosed.  
Hyett v. State
, 58 S.W.3d 826, 830 (Tex. App.—Houston [14th Dist.] 2001, pet. ref’d); 
Jones v. State
, 963 S.W.2d 826, 830 (Tex. App.—Texarkana 1998, pet. ref’d); 
Chavez v. State
, 769 S.W.2d 284, 288-89 (Tex. App.—Houston [1st Dist.] 1989, pet. ref’d).  It is not the number of affirmative links present that is important, but rather the “logical force” that they create to prove that the defendant committed the crime.  
Nhem v. State
, 129 S.W.3d 696, 699-700 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

Appellant represented to Deputy Young that the residence was hers, her social security card was located in the master bedroom, she admitted that marijuana in the bedroom was hers, and the methamphetamine was located in a dresser drawer in the master bedroom that contained both men’s and women’s clothing.  Additionally, Appellant acknowledged that she smelled the chemical odor, but denied knowing where it was emitting from.  Furthermore, the residence contained a substantial amount of contraband used in the production of methamphetamine.

Based on the totality of the circumstances, we conclude that there were sufficient affirmative links to establish that Appellant was in possession of methamphetamine.  Therefore, we hold that 
after considering all the evidence introduced at trial in the light most favorable to the verdict, that there was sufficient evidence for the jury to find the essential elements of the crime beyond a reasonable doubt.  We further hold that the evidence, when viewed in a neutral light, was sufficient to allow the jury to find guilt beyond a reasonable doubt.  Thus, we hold that the evidence was both legally and factually sufficient.

C.  Punishment

Appellant was convicted of possession of a methamphetamine of one gram or more but less than four grams, which is a third degree felony.  
Tex. Health & Safety Code Ann.
 §§ 481.102(6) (Vernon Supp. 2004-05), 481.115(c) (Vernon 2003).  At the punishment hearing, Appellant pleaded true to the enhancement paragraph and true to the two habitual offender paragraphs.  Due to Appellant’s three prior felony convictions, the jury was authorized to assess punishment at confinement for life, or any term of not more than ninety-nine years or less than twenty-five years.  
Tex. Penal Code Ann.
 § 12.42(d) (Vernon Supp. 2004-05).  The jury assessed Appellant’s punishment at seventy-five years’ confinement, which is within the permissible statutory range.  
Our review of the record reveals no reversible error from the punishment phase.

IV.  Conclusion

Our independent review of the record compels us to agree with counsel’s determination that any appeal in this case would be frivolous.  Therefore, we grant counsel’s motion to withdraw on appeal and affirm the trial court’s judgment.

PER CURIAM

PANEL F: GARDNER, J.; CAYCE, C.J.; and LIVINGSTON, J.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  June 16, 2005

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
The record indicates that a total of 1,236 tablets were discovered.