COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-359-CR
  
  
REBECCA 
JOY KIDD A/K/A                                                     APPELLANT
REBECCA 
JOY BARTLETT
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
  
  
------------
 
FROM 
THE 355TH DISTRICT COURT OF HOOD COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
I. Introduction
        Appellant 
was indicted in count one for manufacturing a controlled substance, 
methamphetamine, of more than one gram but less than four grams and in count two 
of possessing a chemical substance, anhydrous ammonia, with intent to 
manufacture a controlled substance, methamphetamine.  Before trial, 
pursuant to an agreement with defense counsel, the State amended count one of 
the indictment to allege possession of a controlled substance, methamphetamine, 
of more than one gram but less than four grams. The State dismissed count two 
and proceeded only on the possession charge.  Appellant pleaded not guilty 
and after a trial on the merits, a jury found Appellant guilty.
        At 
punishment, Appellant pleaded true to the enhancement paragraph that alleged a 
prior conviction for possession with intent to deliver a controlled substance, 
methamphetamine, of one gram or more but less than four grams.  
Additionally, Appellant pleaded true to two habitual paragraphs that alleged 
prior convictions for possession with intent to deliver a controlled substance, 
methamphetamine, of more than four grams but less than two hundred grams and 
possession of a controlled substance, amphetamine, of less than twenty-eight 
grams.  The jury assessed Appellant’s punishment at seventy-five years’ 
confinement.
        Appellant’s 
court-appointed counsel has filed an Anders brief asserting that there 
are no grounds that could be argued successfully on appeal.  Anders v. 
California, 386 U.S. 738, 87 S. Ct. 1396 (1967).  Appellant did not 
file a pro se brief.  We will grant counsel’s motion to withdraw and 
affirm the trial court’s judgment.
II. Factual and 
Procedural Background
        Deputy 
Robert Young of the Hood County Sheriff’s Office testified that on January 22, 
2003 he was working patrol on the night shift.  He stated that he had 
received a report of a possible chemical odor coming from a residence on 
Cleveland Road and he went to the area to investigate.  Deputy Young was 
able to smell a strong chemical odor and followed this odor to 512 Cleveland 
Road.  Deputy Young described the odor as smelling like ether and he stated 
that he was familiar with this smell through training he had received in 
connection with his work with the STOP Narcotics Task Force.  Deputy Young 
walked up the driveway at 512 Cleveland Road and was met by a woman on the porch 
whom he identified as Appellant.
        According 
to Deputy Young, Appellant acknowledged the odor but indicated to him that she 
did not know where it was coming from. Deputy Young stated that Appellant 
indicated that the house was hers and that two males that were inside were 
visiting.  Appellant signed a written consent to search form and informed 
Deputy Young that she had a small amount of marijuana in her bedroom, which was 
recovered.  Deputy Young then proceeded into the backyard and traced the 
odor to a shed. Deputy Young described the odor as “overwhelming” when he 
got to the front door of the shed; therefore, he notified the fire department 
and the STOP Narcotics Task Force in order to have them dismantle the laboratory 
that he discovered inside the shed.  At this point the occupants of the 
residence were secured while a search warrant was obtained to search the shed.
        Roger 
Deeds testified that he responded to 512 Cleveland Road in response to Deputy 
Young’s request. Deeds stated that at the time he was a narcotics investigator 
with the Hood County Sheriff’s Office and was assigned to the STOP Narcotics 
Task Force.  Deeds was also working in the capacity of a volunteer fire 
marshal.  Deeds stated that when he arrived at the location he noticed a 
strong smell of ether and anhydrous ammonia, which he testified is common to a 
methamphetamine lab.
        Deeds 
arrived at about the same time as the fire department and because he felt there 
was a high risk to everyone’s safety, he put on a self-contained breathing 
apparatus and protective gear and entered the shed behind the residence.  
Inside the shed he found a “propane-type tank” containing anhydrous ammonia, 
which was leaking, what he described as a “clandestine manufactured” air 
conditioner blower to vent fumes from the shed, and “other items associated 
with a clandestine methamphetamine laboratory.”  Deeds testified that 
after he determined that the shed was not in immediate danger of exploding, he 
obtained a search warrant for the property.
        Once 
Deeds returned with the warrant, he began his search in the master bedroom, 
where he located a social security card belonging to Appellant and a dresser 
that contained men’s and women’s clothing. Inside the dresser he found razor 
blades and a large quantity of small plastic baggies, which he testified are 
consistent with the distribution of narcotics.  Deeds also recovered two 
small baggies, one containing a white substance and one containing a tan colored 
substance from the dresser, which were sent to the lab for testing.  
Additionally, Deeds recovered marijuana from night stands on both sides of the 
bed in the master bedroom.
        Deeds 
then proceeded to the kitchen where he found a tub containing a large quantity 
of Sudafed tablets,[2] which he described as the basic 
ingredient of methamphetamine.  Along with the pills were grinders and 
blenders that Deeds stated contained residue from Sudafed tablets.  Deeds 
stated that grinders and blenders are used to grind the Sudafed tablets into a 
powder.  Also found was a strainer, which is used to strain larger chunks 
of the powdered Sudafed, and this also contained residue of Sudafed 
tablets.  Deeds also recovered lithium batteries, which he stated are used 
to cause a reaction with the Sudafed and anhydrous ammonia to produce 
methamphetamine.  Deeds stated that the outer shell of a lithium battery is 
removed and the inner ribbon is taken out and it is the ribbon that is used to 
cause the reaction.  Deeds testified that along with new batteries, he 
found ribbons from lithium batteries suspended in some sort of liquid in the 
freezer.  The ribbons are suspended in a liquid, such as Coleman lantern 
fluid, in order to keep them from reacting with air.  Deeds also recovered 
numerous receipts for the purchase of Sudafed tablets, tubing, aqua salt, a gas 
can, coffee filters, and duct tape, all of which Deeds testified are typically 
associated with the manufacture of methamphetamine.  Along with these 
receipts, Deeds found a receipt containing Appellant’s name.
        Inside 
the shed Deeds recovered a gas can with tubing in it, a gas generator, propane 
tanks, tubing, Coleman fluid, a stirring spoon, funnel, and rubber gloves, all 
of which he described as being associated with a clandestine laboratory.
        Heather 
Linch, a chemist for the Texas Department of Public Safety was called to 
describe how methamphetamine is manufactured in clandestine laboratories and to 
testify as to the results of the chemical analysis of the narcotics seized from 
the location.  She testified that the tan colored powder substance weighed 
1.09 grams and tested positive for methamphetamine.  She also testified 
that the white powder weighed 2.47 grams, but only tested positive for 
pseudoephedrine.
        The 
defense called Randy Freeman, who testified that he owned 512 Cleveland Road and 
at the time of the search it was rented by James Brandt, who moved in at the 
beginning of December.  He stated that he had moved out in September of 
2002, but had left some personal items at the residence.  Freeman testified 
that he had met Appellant at the rent house and had seen her there on a couple 
of occasions.  Freeman denied any knowledge of the illegal activities that 
were occurring at the residence.
        Few 
objections were made at trial and none of the rulings made by the trial court to 
the objections constituted reversible error or an abuse of discretion.
III. The Anders 
Brief
        Appellant’s 
court-appointed appellate counsel has filed a motion to withdraw as counsel and 
a brief in support of that motion.  In the brief, counsel avers that, in 
his professional opinion, this appeal is frivolous.  Counsel’s brief and 
motion meet the requirements of Anders, 386 U.S. 738, 87 S. Ct. 1396, by 
presenting a professional evaluation of the record demonstrating why there are 
no arguable grounds for relief.
        Once 
Appellant’s court-appointed counsel files a motion to withdraw on the ground 
that the appeal is frivolous and fulfills the requirements of Anders, 
this court is obligated to undertake an independent examination of the record 
and to essentially rebrief the case for Appellant to see if there is any 
arguable ground that may be raised on Appellant’s behalf.  Stafford v. 
State, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991).
IV. Independent 
Review
A. Pretrial
        Our 
review of the record reveals no jurisdictional defects. The trial court had 
jurisdiction over the case.  See Tex. Code Crim. Proc. Ann. art. 4.05 
(Vernon 2005).  Further, the indictment conferred jurisdiction on the trial 
court and provided Appellant with sufficient notice.  See Tex. Const. art. V, § 12; Duron v. 
State, 956 S.W.2d 547, 550-51 (Tex. Crim. App. 1997).
B. Guilt-Innocence Phase
        Appellate 
counsel brings as possible points on appeal challenges to the legal and factual 
sufficiency of the evidence.  In reviewing the legal sufficiency of the 
evidence to support a conviction, we view all the evidence in the light most 
favorable to the verdict in order to determine whether any rational trier of 
fact could have found the essential elements of the crime beyond a reasonable 
doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 
(1979); Ross v. State, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004).
        In 
reviewing the factual sufficiency of the evidence to support a conviction, we 
are to view all the evidence in a neutral light, favoring neither party.  See 
Zuniga v. State, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only 
question to be answered in a factual sufficiency review is whether, considering 
the evidence in a neutral light, the fact finder was rationally justified in 
finding guilt beyond a reasonable doubt.  Id. at 484.  There 
are two ways evidence may be factually insufficient: (1) the evidence supporting 
the verdict or judgment, considered by itself, is too weak to support the 
finding of guilt beyond a reasonable doubt; or (2) when there is evidence both 
supporting and contradicting the verdict or judgment, weighing all of the 
evidence, the contrary evidence is so strong that guilt cannot be proven beyond 
a reasonable doubt.  Id. at 484-85.  “This standard 
acknowledges that evidence of guilt can ‘preponderate’ in favor of 
conviction but still be insufficient to prove the elements of the crime beyond a 
reasonable doubt.”  Id. at 485.  In other words, evidence 
supporting a guilty finding can outweigh the contrary proof but still be 
insufficient to prove the elements of an offense beyond a reasonable 
doubt.  Id.
        In 
performing a factual sufficiency review, we are to give deference to the fact 
finder’s determinations, including determinations involving the credibility 
and demeanor of witnesses.  Id. at 481; Cain v. State, 958 
S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment 
for that of the fact finder’s. Zuniga, 144 S.W.3d at 482.
        A 
proper factual sufficiency review requires an examination of all the 
evidence.  Id. at 484, 486-87.  An opinion addressing factual 
sufficiency must include a discussion of the most important and relevant 
evidence that supports the appellant’s complaint on appeal.  Sims v. 
State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).
        In 
order to establish the unlawful possession of a controlled substance, the State 
must prove two elements: (1) that the accused exercised care, control, and 
management over the contraband and (2) that the accused knew that the matter 
possessed was contraband. Deshong v. State, 625 S.W.2d 327, 329 (Tex. 
Crim. App. 1981); Guy v. State, 160 S.W.3d 606, 612 (Tex. App.—Fort 
Worth 2005, pet. filed).  It is well established that drug possession need 
not be exclusive, and that an individual can possess drugs jointly with 
others.  State v. Derrow, 981 S.W.2d 776, 779 (Tex. App.—Houston 
[1st Dist.] 1998, pet. ref’d).
        When 
the accused is not in exclusive possession of the place where the substance is 
found, it cannot be concluded that the accused had knowledge of and control over 
the contraband unless there are additional independent facts and circumstances 
which affirmatively link the accused to the contraband.  Deshong, 
625 S.W.2d at 329.  The factors to be considered in establishing an 
affirmative link include the following: (1) defendant’s presence when search 
warrant was executed; (2) whether the contraband was in plain view; (3) 
defendant's proximity to and the accessibility of the narcotic; (4) whether 
defendant was under the influence of narcotics when arrested; (5) whether 
defendant possessed other contraband when arrested; (6) whether defendant made 
incriminating statements when arrested; (7) whether defendant attempted to flee; 
(8) whether defendant made furtive gestures; (9) the presence of odor of the 
contraband; (10) the presence of other contraband or drug paraphernalia; (11) 
defendant's ownership or right to possession of the place where the controlled 
substance was found; and (12) whether the place the drugs were found was 
enclosed.  Hyett v. State, 58 S.W.3d 826, 830 (Tex. App.—Houston 
[14th Dist.] 2001, pet. ref’d); Jones v. State, 963 S.W.2d 826, 830 
(Tex. App.—Texarkana 1998, pet. ref’d); Chavez v. State, 769 S.W.2d 
284, 288-89 (Tex. App.—Houston [1st Dist.] 1989, pet. ref’d).  It is 
not the number of affirmative links present that is important, but rather the 
“logical force” that they create to prove that the defendant committed the 
crime.  Nhem v. State, 129 S.W.3d 696, 699-700 (Tex. App.—Houston 
[1st Dist.] 2004, no pet.).
        Appellant 
represented to Deputy Young that the residence was hers, her social security 
card was located in the master bedroom, she admitted that marijuana in the 
bedroom was hers, and the methamphetamine was located in a dresser drawer in the 
master bedroom that contained both men’s and women’s clothing.  
Additionally, Appellant acknowledged that she smelled the chemical odor, but 
denied knowing where it was emitting from. Furthermore, the residence contained 
a substantial amount of contraband used in the production of methamphetamine.
        Based 
on the totality of the circumstances, we conclude that there were sufficient 
affirmative links to establish that Appellant was in possession of 
methamphetamine.  Therefore, we hold that after considering all the 
evidence introduced at trial in the light most favorable to the verdict, that 
there was sufficient evidence for the jury to find the essential elements of the 
crime beyond a reasonable doubt.  We further hold that the evidence, when 
viewed in a neutral light, was sufficient to allow the jury to find guilt beyond 
a reasonable doubt.  Thus, we hold that the evidence was both legally and 
factually sufficient.
C. Punishment
        Appellant 
was convicted of possession of a methamphetamine of one gram or more but less 
than four grams, which is a third degree felony. Tex. Health & Safety Code Ann. §§ 
481.102(6) (Vernon Supp. 2004-05), 481.115(c) (Vernon 2003).  At the 
punishment hearing, Appellant pleaded true to the enhancement paragraph and true 
to the two habitual offender paragraphs.  Due to Appellant’s three prior 
felony convictions, the jury was authorized to assess punishment at confinement 
for life, or any term of not more than ninety-nine years or less than 
twenty-five years.  Tex. Penal Code 
Ann. § 12.42(d) (Vernon Supp. 2004-05).  The jury assessed 
Appellant’s punishment at seventy-five years’ confinement, which is within 
the permissible statutory range.  Our review of the record reveals no 
reversible error from the punishment phase.
IV. Conclusion
        Our 
independent review of the record compels us to agree with counsel’s 
determination that any appeal in this case would be frivolous.  Therefore, 
we grant counsel’s motion to withdraw on appeal and affirm the trial court’s 
judgment.
 
  
                                                          PER 
CURIAM
 
  
  
PANEL 
F:   GARDNER, J.; CAYCE, C.J.; and LIVINGSTON, J.
 
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
June 16, 2005


NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
The record indicates that a total of 1,236 tablets were discovered.