In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00138-CR
______________________________


MELVIN JAMES LOCKETT, JR., Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 179th Judicial District Court
Harris County, Texas
Trial Court No. 989007


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter


MEMORANDUM OPINION

            A jury trial resulted in the conviction of Melvin James Lockett, Jr., for possession with intent
to deliver a controlled substance, cocaine, in an amount greater than four grams but less than 200
grams. Additionally, the jury found both enhancement paragraphs in the indictment were true and
assessed Lockett's punishment at forty-two years' confinement. We affirm the judgment of the trial
court.
Facts
            On May 25, 2004, at approximately 9:00 p.m., a Harris County deputy sheriff, Jimmy Cook,
was patrolling on Hardy Street in Houston.


 He observed an automobile, driven by Lockett, run a
stop sign. Cook stopped Lockett and asked for his driver's license and insurance documents. Lockett
produced a driver's license, but had no insurance documentation. Cook returned to his vehicle to
check whether Lockett had any outstanding warrants. While this process was taking place, Cook
noticed Lockett, still seated in his car, moving around and looking in his mirror. Cook approached
Lockett's vehicle and asked Lockett to step outside. Instead, Lockett sped away. Cook began to
pursue Lockett and observed him throw a white object out the window. Cook made a mental note
that the object was thrown near the third mailbox from West Hardy Street in about the 100 block of
Spring Stuebner Street. Lockett turned onto Elm Street, drove about twenty-five yards, and turned
into the driveway of a private residence. After Cook pulled his weapon, Lockett complied with
Cook's order to drop to the ground. 
            Deputy Ardres Blanco was in the vicinity as this sequence of events was occurring. Blanco
received radio communication to assist Cook. After conferring with Cook, Blanco went back to
locate the object Lockett had thrown from the window. Blanco was told to look for the item three
mailboxes down on Spring Stuebner Street. On the south side of Spring Stuebner Street, west of
West Hardy Street, Blanco located a clear bag that contained five off-white "cookie-shaped" items. 
Richele Howelton, a chemist, testified the bag contained 95.25 grams of cocaine. 
            Lockett raises seven issues on appeal:
            (1)       the magistrate erred in determining there was probable cause at the statutory warning
hearing;
            (2)       ineffective assistance of trial counsel;
            (3)       the trial court erred in denying the Batson


 challenge;
            (4)       the evidence was factually insufficient to prove an intentional and knowing
possession of a controlled substance with intent to deliver;
            (5)       the failure of the trial court to instruct the jury to disregard portions of the State's jury
argument;
            (6)       the Texas system for sentencing first-degree felonies enhanced with state-jail felonies
is unconstitutional; and
            (7)       error in admission of exhibits.
Probable Cause at the Magistrate Hearing
            The morning after Lockett was arrested, he was taken before a magistrate. The Texas Code
of Criminal Procedure requires that one arrested shall be taken before a magistrate without
unnecessary delay but not later than forty-eight hours after the arrest. Tex. Code Crim. Proc. Ann.
arts. 14.06(a), 15.17(a) (Vernon Supp. 2005). The magistrate is to inform the arrestee of the
accusation and of his or her constitutional and statutory rights. Additionally, the magistrate shall
inform the arrestee of the right to request counsel if the person cannot afford counsel. Tex. Code
Crim. Proc. Ann. art. 15.17 (Vernon Supp. 2005). When proper, the magistrate may appoint
counsel or forward such a request to the proper authority. A record is to be made of the magistrate
informing the person of his or her right to request counsel, the magistrate asking whether the person
requested appointment of counsel, and whether the person requested appointment of counsel. This
record may consist of written forms. See Tex. Code Crim. Proc. Ann. art. 15.17. Additionally,
the Houston police department operates under a permanent injunction preventing it from detaining
persons arrested without a warrant for more than twenty-four hours without taking the person before
a magistrate for a judicial determination of probable cause. Sanders v. Houston, 543 F.Supp. 694
(D. Tex. 1982), aff'd, 741 F.2d 1379 (5th Cir. 1984); Bonner v. State, 804 S.W.2d 580, 582 (Tex.
App.—Houston [1st Dist.] 1991, pet. ref'd). Lockett was taken before the magistrate for these
purposes.
            Lockett asserts that the magistrate erred in finding probable cause for his arrest and, based
on that, concludes the cocaine found as a result of the stop should have been excluded from the trial. 
In presenting this argument, Lockett references evidence that was introduced at the trial on the
merits. The only record of the hearing before the magistrate is a form which shows Lockett's
acknowledgement that he was personally advised of the accusation and declined to request the
appointment of counsel. 
            The form further shows the magistrate found probable cause existed for Lockett's detention. 
We have no record to review of the evidence presented at this magistrate hearing. However, any
determination by the magistrate at that hearing would not be conclusive on the admissibility of the
cocaine into evidence. If the magistrate held there was no probable cause for detention, the remedy
would be Lockett's release. Even if the magistrate determined that detention was justified, such a
finding does not adjudicate the admissibility of evidence. The defendant may move to suppress
evidence if it is thought to be improper, and the trial court may suppress such evidence if it agrees. 
Here, no motion was filed to suppress the admissibility of the evidence found as a result of the arrest
and seizure of the controlled substance. Finally, as we will discuss later, the evidence that was
presented at trial, on which Lockett relies, abundantly supports a determination that the officer
arresting Lockett had probable cause to reasonably conclude he had witnessed Lockett violate several
laws. This point of error is overruled. 
Ineffective Assistance of Counsel
            Lockett asserts he was denied effective assistance of counsel because counsel did not move
to suppress the cocaine seized as a result of an unlawful arrest and detention. Lockett must show his
counsel's representation fell below the standard of prevailing professional norms, and there is a
reasonable probability that, but for counsel's deficiency, the result of the trial would have been
different. Strickland v. Washington, 466 U.S. 688 (1984); Salinas v. State, 163 S.W.3d 734, 740
(Tex. Crim. App. 2005). Review of counsel's actions is highly deferential. Strickland, 466 U.S. at
689; Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000).
            Lockett's assertion is a conclusory one without any argument to support it. He concludes that
"[s]urely had a suppression hearing been held, . . . evidence obtained as a result of the wrongful
detention . . . would have been determined illegal . . . ." We disagree. 
            Such a decision must be based on whether Cook was justified in detaining Lockett for a
traffic offense investigation. A peace officer is authorized to arrest a person without a warrant for
committing an offense in the officer's presence or within his or her view. Tex. Code Crim. Proc.
Ann. art. 14.01(b) (Vernon 2005). The evidence established that Cook observed Lockett fail to stop
at a marked stop line, violative of Texas law. See Tex. Transp. Code Ann. § 544.010 (Vernon
1999). After a proper detention of Lockett, he was unable to produce evidence that his vehicle was
properly insured, another violation of the law. See Tex. Transp. Code Ann. § 601.053 (Vernon
1999). After being properly detained and when asked to step outside of his vehicle, Lockett sped
away, which constituted the offense of evading detention. See Tex. Pen. Code Ann. § 38.04
(Vernon 2003). During the pursuit of Lockett's vehicle, Cook observed him throw an object out of
his window. Blanco found the bag of cocaine in the area that Cook observed Lockett toss the white
object. We find there was ample evidence to support the officer's arrest of Lockett and the
subsequent seizure of the substance. The decision by counsel not to challenge this seizure is
reasonable and is certainly not evidence of ineffective assistance of counsel. 
The Batson Challenge
            A defendant has the right to be tried by a jury whose members have been selected in a
nondiscriminatory fashion. Batson, 476 U.S. at 85–86. 
            Lockett alleges this right was violated at his trial by the State's use of its peremptory
challenges and the failure of the trial court to sustain Lockett's Batson objections. Specifically,
Lockett argues that veniremembers 16, 20, 25, 27, 33, and 43 were struck improperly and without
race-neutral explanations by the State. Lockett proved that he was an African-American and that no
African-Americans were seated on the jury. 
            A three-step process is used in determining Batson challenges. The first step requires the
opponent of a peremptory strike to present a prima facie case of racial discrimination. The second
step requires the proponent of the strike to produce a race-neutral explanation. When such an
explanation is offered, the trial court must decide whether the opponent of the strike has proved
purposeful racial discrimination. If the State offers a race-neutral explanation, the burden is on the
defendant to convince the court that the State's reasons were not race neutral. See Ford v. State,
1 S.W.3d 691, 693 (Tex. Crim. App. 1999). At the third stage, the defendant may rebut the State's
explanation to show it is a pretext concealing discrimination. Purkett v. Elem, 514 U.S. 765, 767–68
(1985). 
            We review a Batson ruling by considering the record in the light most favorable to the trial
court's ruling. Williams v. State, 804 S.W.2d 95, 101 (Tex. Crim. App. 1991). We review the record
to determine if the trial court's decision was clearly erroneous—whether after examining the record,
we are left with the definite and firm conviction that a mistake has been made. Guzman v. State, 85
S.W.3d 242, 254 (Tex. Crim. App. 2002). 
            Venireperson number 16—The State's explanation for striking venireperson number 16 was
that he was a postal employee: "He didn't speak. We don't know anything about him. 
Characteristics of postal employees are they fly off the handle. You don't know what's going on,
even the term, 'going postal.'" We have some of the same reservations about labeling postal
employees generally as the court in Tompkins v. State, 774 S.W.2d 195, 205 (Tex. Crim. App. 1987),
aff'd, 490 U.S. 754 (1989) ("We have some difficulty understanding the relevancy of a venireperson's
employment as a postman . . . as far as his qualifications for jury service."). However, we cannot
require the State's explanation to be plausible or persuasive so long as it is racially neutral. 
Hernandez v. New York, 500 U.S. 352, 360 (1991). Unless a discriminatory intent is inherent in the
State's explanation, the reason offered will be deemed racially neutral. Id. This explanation is
facially valid and shifted the burden of persuasion to Lockett. Lockett did not rebut the State's
reason for the strike to show it was merely a pretext for concealing discrimination. We cannot say
the trial court clearly erred in overruling the objection to this peremptory challenge. 
            Venireperson number 20—The State explained it struck venireperson number 20 because of
previous criminal accusations—"she has an issue, warrant of a bad check conviction out of JP Court
in the Year 2000." On query by the trial court, the State further explained that the matter was not
a conviction but "issuance." Apparently, this refers to issuance of a warrant for the violation. This
explanation is facially neutral. The fact that a venireperson has some previous charges or some form
of alleged criminal violation is a traditional rationale for exercising a peremptory challenge. 
Frierson v. State, 839 S.W.2d 841, 853 (Tex. App.—Dallas 1992, pet. ref'd). Lockett has not
rebutted the explanation, and there is nothing in the record to overturn the trial court's finding that
no racial motive was involved. 
            Venireperson number 25—The State originally referred to this person as number 26, but the
court referred to him as number 25. The explanation for the strike was that he "was saying that five
years was too much." During the State's presentation of voir dire examination, venireperson number
25 expressed some reservation concerning a range of punishment of five to ninety-nine years'
confinement. Striking a venireperson who expresses doubt about the full range of punishment is race
neutral. See Barron v. State, 864 S.W.2d 189, 191 (Tex. App.—Texarkana 1993, no pet.). No
showing was made by Lockett that such a strike was a sham or pretext. 
            Venireperson number 27—The State explained this juror had her eyes closed for much of the
voir dire examination, appeared to sleep, and was inattentive. Appellate courts should carefully
evaluate the adequacy of counsel's observations of a veniremember's demeanor as a race-neutral
reason, but the appellate court should not hold as a matter of law that a subjective assessment is a
pretext. See Yarborough v. State, 947 S.W.2d 892, 896 (Tex. Crim. App. 1997). The trial court,
who witnessed the demeanor of the veniremembers, is in a better position than an appellate court to
judge the credibility of observations about the demeanor of venirepersons. Lockett did not challenge
the statements by the State concerning the appearance and lack of attentiveness by this venireperson,
and such statements constitute a sufficient record to uphold the trial court's finding. 
            Venireperson number 33—The venireperson notified the court and attorneys that he had been
in an automobile accident, was being treated by a chiropractor, and had more appointments
scheduled. He did not know the date for his next appointment, but his usual days were Mondays,
Wednesdays, and Fridays. The State's rationale for striking this venireperson was that he would be
unavailable on certain days during the trial. During the course of the voir dire examination, the trial
court inquired as to the name and telephone number of his doctor and stated, "We can try to contact
him and see when it is and see if you can reschedule." After the State's explanation of the juror
challenge, the defense countered that, "[w]e never heard back as to whether or not he was able to
reschedule." The court observed that neither side spoke to him further concerning whether he was
able to reschedule the appointments. It is not clear from the record that the venireperson was asked
to reschedule the appointment; the record appears to suggest that the trial court's statement, "We can
try to contact him" indicated that a court official would make that attempt. However, no other
information was produced. The fact a venireperson has a medical condition and required medical
attention, thereby creating a problem for attending the trial, is a race-neutral reason for exercising
the strike. There is no evidence that such a reason was pretextual. 
            Venireperson number 43—This venireperson stated that one of Lockett's attorneys had
represented her "sister's father's kids." The State explained that it used a jury strike on this person
because one of Lockett's lawyers had "represented an acquaintance or former in-law." The attorney
acknowledged to the trial court that the venireperson's statement was accurate. A conventional
question asked on voir dire examination is whether any of the members of the panel know any of the
attorneys in the case. The fact that this venireperson knew one of the attorneys representing Lockett
in this case was a race-neutral explanation for the peremptory challenge. We hold the trial court did
not err in overruling the Batson motion. 
Factual Sufficiency
            In our review of the factual sufficiency of the evidence concerning matters where the State
has the ultimate burden of proof or persuasion, we employ the standards set forth in Zuniga v. State,
144 S.W.3d 477, 484 (Tex. Crim. App. 2004). We view all the evidence in a neutral light and
determine whether the evidence supporting the verdict is too weak to support the finding of guilt
beyond a reasonable doubt or if evidence contrary to the verdict is strong enough that the
beyond-a-reasonable-doubt standard could not have been met. Threadgill v. State, 146 S.W.3d 654,
664 (Tex. Crim. App. 2004) (citing Zuniga, 144 S.W.3d at 486). If the evidence is factually
insufficient, then we must reverse the judgment and remand for a new trial. Clewis v. State, 922
S.W.2d 126, 135 (Tex. Crim. App. 1996).


 
            The charge was that Lockett possessed, with intent to deliver, a controlled substance, cocaine,
weighing more than four grams and less than 200 grams, including any adulterants and dilutants. 
See Tex. Health & Safety Code Ann. § 481.112(a), (d) (Vernon 2003). "Possession" means
actual care, custody, control, or management. Tex. Health & Safety Code Ann. § 481.002(38)
(Vernon Supp. 2005). Intent to deliver may be shown by circumstantial evidence. Williams v. State,
902 S.W.2d 505, 507 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). Additionally, intent to
deliver may be inferred from the (1) quantity of drugs possessed, (2) the nature of the location where
the defendant was arrested, (3) the manner of packaging the drugs, (4) the presence or absence of
drug paraphernalia, (5) whether the defendant possessed a large amount of cash in addition to the
drugs, and (6) the defendant's status as a drug user. Guy v. State, 160 S.W.3d 606, 614 (Tex.
App.—Fort Worth 2005, pet. ref'd). 
            Here, after Lockett was stopped for a traffic offense, he attempted to drive away from the
arresting officer. The officer followed him and saw Lockett throw an object from his vehicle. A
second officer, after being advised as to the whereabouts of the object, found a clear bag in the
location indicated. It contained five "cookies" found to contain 95.25 grams of cocaine, a fairly
significant quantity. The "cookies" were packaged in a clear bag—according to Blanco, a common
manner of packaging cocaine. Inside Lockett's car, a search revealed a brown bag containing
$1,538.00 in cash. A pocket in that bag contained residual amounts of cocaine. The amount of
cocaine, large amount of cash, manner of packaging, and residue found support an inference that
Lockett intended to deliver the cocaine. 
            Lockett argues that the evidence is factually insufficient, pointing out as contravening
evidence: (1) it is not uncommon to find cocaine on the city streets, (2) the cocaine was in a more
crumbled condition at the trial than when it was found, and (3) the vagueness of the information
given to the deputy who found the cocaine. These arguments are in the nature of factual disputes
or conclusions drawn from the facts—all of which are matters for a jury to resolve. It is not within
our authority to merely substitute our own judgment for that of the jury. After reviewing all the
evidence in a neutral light, we conclude that the evidence supports the verdict of guilt beyond a
reasonable doubt. Further, the controverting evidence is not so strong that the beyond-a-reasonable-doubt standard could not have been met. 
Prejudicial Closing Arguments
            In the closing argument, Lockett argued that the roads contain a lot of trash and that a person
cannot be responsible for items disposed of by another person. In response, the State argued that
Lockett's counsel maintained that the road was full of trash and that there might be trash on either
side of the road. The State then argued, "He might also have you believe that there is crack cocaine,
$9500 worth of crack cocaine." An objection was presented that the argument was outside the
record. The trial court admonished the State to stay within the record, but denied a motion to instruct
the jury to disregard the statement. Lockett argues there is no evidence to support the statement that
the cocaine was worth $9,500.00, that such statement was outside the record, highly prejudicial, and
compels a reversal.
            The State reasons the jury argument was supported by the testimony of Blanco, who stated
that a "rock" weighs approximately .1 gram and sells for $10.00 to $20.00. Since this cocaine
weighed more than 95 grams, the State argues Blanco's testimony supports the value of $9,500.00
(95 grams of cocaine = 950 rocks x $10.00 =$9,500.00). However, the State fails to mention that,
when this testimony was presented by Blanco, the trial court sustained an objection to its
admissibility as follows:
Q.And how is that packaged usually, sir?
 
A.It is usually packaged in clear packages. It will take a cookie form and
it's sold. When it's being packaged for sale, it's -- it can be cut into small pieces to
be sold for ten dollars, twenty dollars. 
 
[Defense counsel]: Your Honor, I object. That wasn't the question.
 
THE COURT: Sustained.
 
[Defense counsel]: He's going into a narrative.
 
THE COURT: Question is as to packaging. 

The original question concerned the manner of packaging the cocaine. The answer included
evidence concerning the value of the cocaine; the trial court sustained an objection and limited the
answer to packaging. Therefore, the State may not rely on this testimony to support the jury
argument regarding the value of the drugs. 
            Cook testified that the value of a "crack rock" is approximately $20.00 and that a "rock"
weighs between .4 and .5 grams. He further testified that a twenty-gram crack cocaine "cookie" had
a street value of between $100.00 and $150.00. Cook's testimony supports a maximum value for the
drugs ranging from $3,800.00 to $4,760.00 (95 grams of cocaine converted into "rocks" each
weighing .4 to .5 grams = 190 to 238 rocks x $20.00 per rock = $3,800.00 to $4,760.00). Therefore,
the evidence presented and admitted before the jury does not authorize an argument that the value
of the cocaine was $9,500.00, and the trial court erred in overruling the motion to instruct the jury
to disregard the argument. Having found error, we will consider whether reversible error is
presented.
            The Texas Court of Criminal Appeals has held that comments by the State on matters outside
the record should be reviewed using the standard of harm for nonconstitutional errors. Martinez v.
State, 17 S.W.3d 677, 692 (Tex. Crim. App. 2000). Nonconstitutional error "that does not affect
substantial rights must be disregarded." Tex. R. App. P. 44.2(b). In making this determination, we
are to balance the following three factors: (1) severity of the misconduct (prejudicial effect),
(2) curative measures, and (3) the certainty of the conviction absent the misconduct. See Mosley v.
State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). 
            (1)       Severity of the misconduct (prejudicial effect)—Here, the State argued that the value
of the cocaine was $9,500.00 when the maximum the evidence justifies is approximately one half
that amount. We do not find this to be an extremely prejudicial statement. While the statement is
erroneous, based on the admitted evidence, it does not introduce new or extraneous subject matter,
but is a misstatement of degree. The jury knew, from properly admitted testimony, that Lockett
possessed several thousand dollars' worth of cocaine. 
            (2)       Curative measures—There were no curative measures taken by the trial court.
            (3)       The certainty of the conviction absent the misconduct—The evidence has been
previously outlined—it includes Lockett's attempt to elude a police officer, dispose of the
contraband, and the recovery of a large amount of cocaine and cash. The cocaine was found at the
location the officer observed Lockett throw it out the window. Even without the improper reference
to the value of the contraband, the inculpatory nature of the evidence presented made Lockett's
conviction highly certain. Lockett also argues that this evidence affected his sentencing. Lockett
was found to have previously committed two felony offenses, which required a minimum
punishment of twenty-five years' confinement and allowed a maximum of life imprisonment. The
jury assessed punishment at forty-two years' confinement—nearer the lower end of the punishment
range. There was potent evidence to support the punishment assessed by the jury without any
consideration of an improper jury argument. 
            We find the improper jury argument did not affect Lockett's substantial rights and must be
disregarded. 
Constitutionality of Texas System for Enhancement of First-Degree Felonies
            This point of error, as stated, argues that the Texas system for sentencing first-degree felonies
enhanced by state-jail felonies is unconstitutional. However, the body of the argument never
mentions state-jail felonies until the concluding prayer. Perhaps the explanation is that the two
felonies used to enhance Lockett's punishment were not state-jail felonies, but at the time of the
previous convictions, were second-degree felonies (less than 28 grams). There is no evidence that
the two prior felonies used to enhance Lockett's punishment would now be classified as state-jail
felonies (less than one gram). See Tex. Health & Safety Code Ann. § 481.115(b) (Vernon 2003). 
            At trial, Lockett presented the trial court with a motion to declare the Texas sentencing
system unconstitutional. The argument advanced was that the United States Supreme Court decision
in Apprendi


 and other cases required a jury finding concerning facts used to enhance punishment. 
The court denied the motion to declare the Texas sentencing system unconstitutional. Again, the
argument based on Apprendi is not mentioned in Lockett's brief to this Court; we will not address
it further.
            As we understand the brief, Lockett argues that the Texas sentencing system gives no
guidance to the jury and allows "unbridled discretion of judges and juries to carry our sentencing in
a dangerously 'willy-nilly' manner." Further, such unrestricted discretion imperils Eighth
Amendment promises. We interpret Lockett's issue to present a challenge to the facial validity to
Article 12.42(d), as such may be raised for the first time on appeal. Ex parte Flores, 130 S.W.3d
100, 106 (Tex. App.—El Paso 2003, pet. ref'd). In a facial challenge to the constitutionality of a
statute, the challenger must establish that no set of circumstances exists under which the statute will
be valid. Santikos v. State, 836 S.W.2d 631, 633 (Tex. Crim. App. 1992). The Texas Court of
Criminal Appeals has held that Article 12.42(d) does not violate the Eighth Amendment. 
Armendariz v. State, 529 S.W.2d 525, 527 (Tex. Crim. App. 1975). We overrule Lockett's point of
error. 
Admission of Exhibits
            Lockett contends the trial court erred in admitting exhibits 11 and 13. At trial, the objection
to exhibit 13 (a certified copy of a judgment from the district clerk of Montgomery County, Texas)
was that the number assigned to the case as shown on the first page of the judgment contained the
letters "CR" after the number 91-03-00397, whereas the certificate from the district clerk's office
only has the number and does not also have the letters "CR." Further, the certificate from the clerk
appeared on page three of a five-page document. These objections had no merit, and the trial court
properly overruled them. 
            As to exhibit 11 (a certified copy of a judgment from the district clerk of Harris County), the
objection was that the same judgment also was in evidence in a pen packet. The trial court, after
reviewing the two documents, stated that State's exhibit 11 appeared to be more legible than the last
page of State's exhibit 10 and overruled the objection. Both pen packets and certified judgments of
conviction are admissible evidence in the punishment phase of a trial. Tex. R. Evid. 901(b)(7),
902(1), (4); Reed v. State, 811 S.W.2d 582, 587–88 (Tex. Crim. App. 1991). The trial court has
broad discretion in the admission of evidence. We review a trial court's ruling admitting evidence
under an abuse of discretion standard. Mozon v. State, 991 S.W.2d 841, 847 (Tex. Crim. App.
1999). The ruling is reversed only if it is outside the zone of "reasonable disagreement." 
Montgomery v. State, 810 S.W.2d 372, 388–90 (Tex. Crim. App. 1990) (op. on reh'g). Here, the trial
court examined the documents and articulated a plausible rationale for admitting the judgment. We
cannot say that determination was outside the zone of reasonable disagreement. 
            Lockett also objected to the introduction of all pen packets based on his theory that the Texas
system for enhancing felony offenses is unconstitutional. We have overruled Lockett's constitutional
argument, and further find the trial court did not err in admitting the pen packet.
            The point of error is overruled. We affirm the judgment of the trial court. 
 

                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          March 27, 2006
Date Decided:             April 13, 2006

Do Not Publish